IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OLIVIA TOMASETTI<br>642 Beaver Street, Apt. 1<br>Bristol, PA 19007<br><br>　　　　Plaintiff,<br>　v.<br><br>MaST COMMUNITY CHARTER<br>SCHOOL II<br>6501 New State Road<br>Philadelphia, PA 19135<br><br>　　　　Defendant. | CIVIL ACTION<br><br>DOCKET NO.:<br><br><br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Olivia Tomasetti (*hereinafter* referred to as "Plaintiff," unless indicated otherwise), by and through her undersigned counsel, hereby avers as follows:

### INTRODUCTION

1.　This action has been initiated by Plaintiff against MaST Community Charter School II, (*hereinafter* referred to as "Defendant" unless indicated otherwise) for violations of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et. seq*.), the Pennsylvania Human Relations Act ("PHRA") and the Philadelphia Fair Practices Ordinance ("PFPO").[1] Plaintiff asserts, *inter alia*, that she was unlawfully terminated from Defendant. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

---

[1] Plaintiff's claim under the PHRA/PFPO are referenced herein for notice purposes. Plaintiff is required to wait 1 full year before initiating a lawsuit from date of dual-filings with the EEOC. Plaintiff must however file her lawsuit in advance of same because of the date of issuance of her federal right-to-sue letter under the ADA. Plaintiff's PHRA/PFPO claims however will mirror identically her federal claims under the ADA.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 and 1343(a)(4) because it arises under laws of the United States and seeks redress for violations of civil rights under the ADA.

3. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5. Plaintiff filed a Charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing her Charge, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

## PARTIES

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. Defendant MaST Community Charter School II ("Defendant") is a public charter school operating in Philadelphia, serving grades K-12.

9. At all times relevant herein, Defendant acted by and through their agents, servants and/or employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff was employed with Defendant beginning on or about April 1, 2022.

12. In total, Plaintiff was employed with Defendant for almost one (1) year (or 11 months in total).

13. Plaintiff was hired by Defendant to work as a Special Education Teacher, and at all times was assigned to Defendant's "Tacony Campus," (which is 3-12th grade).

14. At all times during her employment, Plaintiff reportedly directly or indirectly, to the following management: Lindsey Fleming (Special Education Coordinator), Ronald Harvey (Principal); and Whitney El Laisy (Building Administrator).

15. During her employment, Plaintiff was an asset to Defendant's school, contributing fully to student and curriculum needs, was held in high regard by the school's Administrators and was not the subject of any type of discipline or performance based problems.

16. Plaintiff suffers from numerous disabilities, including by way of examples only: Reflex Neurovascular Dystrophy ("RND"), Irritable Bowel Syndrome ("IBS"), chronic migraines, insomnia, an autoimmune disorder, anxiety and depression.

17. As a result of Plaintiff's aforesaid health conditions, she was (at times) limited in her ability to perform some daily life activities, including but not limited to performing manual

tasks, social interaction, sleeping, focusing, and working (not meant to be exhaustive but mere illustrations of some major life activities substantially affected).

18. Plaintiff's conditions began to flare severely beginning in or about September of 2022, and she missed periodic days off including on or about September 6 through on or about September 9, 2022.

19. On or about September 16, 2022, Plaintiff provided Defendant with a medical note outlining her diagnosed conditions (in the event she needed any additional periodic partial or full days off from work).

20. Plaintiff's conditions were not well controlled at the time, and she continued to miss several intermittent days in early November, 2022.

21. By November 8, 2022, Plaintiff sent a detailed email to Defendant's management relaying her then medical conditions in intimate detail, including the severity, the nature of the medications she was taking, and just how badly she was struggling with her latest flare (and calling out of work that same date).

22. Defendant's management forwarded Plaintiff's November 8, 2022 email to Human Resources, so she could explore taking "FMLA" or "Short term disability."

23. Plaintiff's last physical day of work with Defendant before her necessary medical leave (discussed *infra*) was on or about November 10, 2022.

24. In the meantime, Plaintiff's point of contact for seeking medical leave (a reasonable accommodation[2]) was Michele Morgan (Human Resources Manager).

---

[2] A leave of absence for medical care or treatment can be a reasonable accommodation. *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 151 (3d Cir. 2004) (holding that a request for medical leave is a protected activity under the ADA); *Bernhard v. Brown & Brown of Lehigh Valley, Inc.*, 720 F. Supp. 2d 694, 701 (E.D. Pa. 2010) (stating that a medical leave can be a reasonable accommodation); *Browning,* 178 F.3d at 1049 n.3; *Nunes v. Wal-Mart Stores, Inc.,* 164 F.3d 1243, 1247 (9th Cir. 1999); *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.,* 155 F.3d 775, 783 (6th Cir. 1998); *Criado v. IBM Corp.,* 145 F.3d 437, 443 (1st Cir. 1998). The EEOC Compliance Manual

25.     Plaintiff then conversed with Morgan about options for taking leave (and was told she did not qualify for FMLA, as she had not been employed for 1 full year).

26.     After conversing with Morgan, Plaintiff confirmed via email dated November 17, 2022 to Morgan and all Defendant's management that she would be pursuing a leave through Defendant's short term disability program, in order to "fully recover, and start a course of action to further support my health."

27.     Plaintiff was very communicative about her leave needs; she also explained in the same November 17, 2022 email: (a) she was offering to provide materials for educational support in her absence; (b) she asked what supporting documentation was required for her medical leave; and (c) she was seeking assurances her health and medical needs would not negatively impact her continued employment.

28.     Plaintiff was communicating nearly weekly with Defendant about the status of her medical leave and assisting with student matters or facilitating teaching early into her medical leave.

29.     Importantly, on or about December 4, 2022, Plaintiff had also returned any disability related paperwork requested by Morgan and within the time frame requested.

30.     By January 18, 2023, Plaintiff was emailing Morgan, explaining she had medical appointments, was undergoing "therapy and counseling," and that she would continue to update her (inviting "**any** questions or concerns"); this included any additional paperwork (<u>and nothing was requested</u>).

---

supports this approach. [*18] *See* EEOC Compliance Manual, Vol. II, § 902 Intro. (June 2006), available at 2006 WL 4673363. "Permitting the use of accrued paid leave, or unpaid leave, is a form of reasonable accommodation when necessitated by an employee's disability." *Id.; see also* 29 C.F.R. Pt. 1630, App. ("[O]ther accommodations could include . . . providing additional unpaid leave for necessary treatment . . . .").

5

31. Defendant demonstrated little to no understanding of its obligations under the ADA, and instead simply left Plaintiff to pursue a claim through their short term disability benefits insurer (strictly seeking updates on that claim when Plaintiff reached out periodically).

32. Plaintiff was unequivocally led to believe her job was being held given her leave needs and another staff member (Lauren) was only *temporarily* handling Plaintiff's assigned children until her return – and Plaintiff should return when she was ready.

33. Plaintiff was never given any deadline of return, but only welcomed to use the time she needed; Plaintiff was informed she didn't need to submit FMLA papers (as she wasn't eligible), and thus informed she was on leave through their "short term disability."

34. Plaintiff could have resumed working as early as February of 2023 if she needed to, but Plaintiff remained out through that time as an extra precaution to ensure she was properly treated.

35. On or about February 23, 2023, Plaintiff had a telephone call with Morgan.

36. During this call, Morgan informed Plaintiff that her job position had been filled and she would be reassigned upon her return to work; Plaintiff justifiably expressed concerns that same day to Defendant's management about the lack of information or communication with her in this regard.

37. Firmly believing her job had been secure, Plaintiff had planned to return the first half of March 2023.

38. Morgan then emailed Plaintiff on February 23, 2023 stating: "You will only be able to return to work with a doctor's note stating you are released from their care," and that she was calling Plaintiff "to further discuss."

6

39. To return to her (anticipated) reassigned role (she was told it would be as an "Inclusion Teacher"), Plaintiff scheduled a follow up medical appointment to be cleared to resume working.

40. Plaintiff did feel the need to email Defendant's management on March 6, 2023, expressing (a) concerns she had never been spoken to about her return or job being filled; (b) her physician is in the process of clearing her to resume working promptly; and (c) seeking a meeting to discuss her intended new position (as the Charter School system was quite large).

41. Plaintiff was provided with a medical note dated March 8, 2023 by her physician, fully clearing Plaintiff to resume working on March 9, 2023 (as stated, had Plaintiff been told she needed to return sooner, she would have sought said clearance in February of 2023).

42. Plaintiff was then sent a termination letter dated March 9, 2023.

43. The termination letter, as written is outrageous (and punitive worthy):

(i) It **falsely** claims Plaintiff was supposed return by "February 6, 2023 after using the 12 weeks of FMLA," despite no one ever told Plaintiff she had to return by February 6, 2023;

(ii) Plaintiff actually could have been medically returned by February 6, 2023 if she was ever told this was a mandatory return to work date (<u>or</u> if there was an interactive dialogue);

(iii) Reference of FMLA was objectively absurd, as Plaintiff was flatly told she was "not eligible for FMLA" as she was an under 1 year employee;

(iv) Under the ADA, a medical accommodation can easily span 3-5 months – and is not supposed to be tied to some arbitrary cutoff date of 12 weeks[3];

---

[3] *Shannon v. City of Phila.*, CIVIL ACTION NO. 98-5277, 1999 U.S. Dist. LEXIS 18089, at *6 (E.D. Pa. Nov. 23, 1999) (noting that "reasonable accommodation is a 'continuing' duty and is not exhausted by one effort" and denying

7

(v)  It stated Defendant received nothing after November 29, 2022 about Plaintiff's medical status from a physician; yet, Plaintiff asked several times and in writing if Defendant required anything from her doctors and was quite literally told "none."

44. Defendant's termination letter was blatant discrimination and retaliation, as Defendant had just affirmatively told her she would be returning in a newly chosen position, but once Plaintiff confirmed she was obtaining medical clearance to return – Defendant had a proverbial "knee jerk reaction," and then moved to separate.

## First Cause of Action
### Violations of the Americans with Disabilities Act, as Amended ("ADAAA")
**(Actual/Perceived/Record of Disability Discrimination, Failure to Accommodate & Retaliation)**

45. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

46. Plaintiff suffered from qualifying health conditions under the ADA (as amended) which affected her ability (at times) to perform some daily life activities, as described *supra*.

47. Plaintiff requested reasonable accommodations from Defendant, including but not limited to a reasonable period of medical leave.

---

summary judgment where a jury could reasonably believe the plaintiff's request for an additional three months of unpaid medical leave after a twelve-week FMLA leave was a reasonable accommodation); *Daniel v. T-Mobile USA, Inc.*, No. 17-4873, 2019 U.S. Dist. LEXIS 80003, at *36 (E.D. Pa. May 10, 2019)(holding a six-month extension of leave was a fact question for a jury as to whether said leave would enable plaintiff to perform essential functions of his job in the near future); *Rascon v. U.S. W. Communs, Inc.,* 143 F.3d 1324, 1327, 1335 (10th Cir. 1998) (plaintiff's request for four-to-five months of treatment considered a reasonable accommodation); *Powers v. Polygram Holding, Inc.,* 40 F. Supp. 2d 195, 200-02 (S.D.N.Y. 1999) (plaintiff's request for seventeen weeks of leave was not unreasonable as a matter of law, where plaintiff and his doctors gave a reasonable estimate of a return to work date and kept the employer aware of his work availability). "[A] single, short absence from work does not prevent such an individual from being 'qualified' under the ADA . . . . " *Stubbs v. Marc Ctr.,* 950 F. Supp. 889, 893 (C.D. Ill. 1997).

48. Defendant improperly failed to engage in the interactive process, by refusing to be clear on their expectations regarding any medical documentation required to support Plaintiff's leave needs, providing any clarity on the approved duration of their internal leaves or that which was sought by Plaintiff, declining to provide or seek expected return to work dates or otherwise.

49. Defendant's outright refusal to engage left Plaintiff with little information to properly obtain medical clearances from her doctors and to return sooner if necessary to avoid termination.

50. Defendant filled Plaintiff's position while she was on leave without any discussion with Plaintiff about whether or not she was expecting to return and when.

51. Defendant then terminated Plaintiff after she made internal complaints opposing Defendant's mistreatment toward her while on leave, and likely due to their misperceptions she may need ongoing leave in the future given Plaintiff's disclosure as to the severity of the conditions from which she suffered.

52. Plaintiff believes and therefore avers that she was terminated as a direct result of her (1) known and/or perceived health problems; (2) record of impairment; (3) requests for reasonable accommodations; and/or (4) due to her internal complaints about their mishandling of her ADA needs and mistreatment of her related thereto.

53. These actions as aforesaid constitute violations of the ADAAA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to be prohibited from continuing to maintain its illegal policy, practice or custom of discriminating/retaliating against employees and is to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B.	Defendant is to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered retaliation/discrimination at the hands of Defendant until the date of verdict;

C.	Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law(s) alleged asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D.	Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

E.	Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F.	Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G.	Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

                          Respectfully submitted,

                          **KARPF, KARPF & CERUTTI, P.C.**

By:    _____

                          Ari R. Karpf, Esq.
                          3331 Street Road
                          Two Greenwood Square
                          Building 2, Ste. 128
                          Bensalem, PA 19020
                          (215) 639-0801

Dated: January 30, 2024

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Olivia Tomasetti | : | CIVIL ACTION |
| v. | : | |
| MaST Community Charter School II | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.   ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.   ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.   ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)   ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   (X)

| 1/30/2024 | _[signature]_ | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 639-0801 | (215) 639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: 642 Beaver Street, Apt 1, Bristol, PA 19007

Address of Defendant: 6501 New State Road, Philadelphia, PA 19135

Place of Accident, Incident or Transaction: Defendant's place of business

---

**RELATED CASE, IF ANY:**

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes [ ]  No [X]

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes [ ]  No [X]

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes [ ]  No [X]

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes [ ]  No [X]

I certify that, to my knowledge, the within case [ ] is / [X] is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 1/30/2024    _____(signature)_____    ARK2484 / 91538
                     *Attorney-at-Law / Pro Se Plaintiff*           *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A.**  *Federal Question Cases:*
1. [ ] Indemnity Contract, Marine Contract, and All Other Contracts
2. [ ] FELA
3. [ ] Jones Act-Personal Injury
4. [ ] Antitrust
5. [ ] Patent
6. [ ] Labor-Management Relations
7. [X] Civil Rights
8. [ ] Habeas Corpus
9. [ ] Securities Act(s) Cases
10. [ ] Social Security Review Cases
11. [ ] All other Federal Question Cases
    *(Please specify):* _____

**B.**  *Diversity Jurisdiction Cases:*
1. [ ] Insurance Contract and Other Contracts
2. [ ] Airplane Personal Injury
3. [ ] Assault, Defamation
4. [ ] Marine Personal Injury
5. [ ] Motor Vehicle Personal Injury
6. [ ] Other Personal Injury *(Please specify):* _____
7. [ ] Products Liability
8. [ ] Products Liability – Asbestos
9. [ ] All other Diversity Cases
   *(Please specify):* _____

---

### ARBITRATION CERTIFICATION
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Ari R. Karpf, counsel of record *or* pro se plaintiff, do hereby certify:

[X] Pursuant to Local Civil Rule 53.2, § 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

[ ] Relief other than monetary damages is sought.

DATE: 1/30/2024    _____(signature)_____    ARK2484 / 91538
                     *Attorney-at-Law / Pro Se Plaintiff*           *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
TOMASETTI, OLIVIA

### DEFENDANTS
MAST COMMUNITY CHARTER SCHOOL II

**(b)** County of Residence of First Listed Plaintiff: **Bucks**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: **Philadelphia**
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Karpf, Karpf & Cerutti, P.C.; 3331 Street Road, Two Greenwood Square, Suite 128, Bensalem, PA 19020; (215) 639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated or Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury - Product Liability | 690 Other | 423 Withdrawal 28 USC 157 | 376 Qui Tam (31 USC 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | 410 Antitrust |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability | | | 820 Copyrights | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine | 368 Asbestos Personal Injury Product Liability | | 830 Patent | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | **PERSONAL PROPERTY** | | 835 Patent - Abbreviated New Drug Application | 460 Deportation |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle | 370 Other Fraud | **LABOR** | 840 Trademark | 470 Racketeer Influenced and Corrupt Organizations |
| 160 Stockholders' Suits | 355 Motor Vehicle Product Liability | 371 Truth in Lending | 710 Fair Labor Standards Act | **SOCIAL SECURITY** | 480 Consumer Credit |
| 190 Other Contract | 360 Other Personal Injury | 380 Other Personal Property Damage | 720 Labor/Management Relations | 861 HIA (1395ff) | 490 Cable/Sat TV |
| 195 Contract Product Liability | 362 Personal Injury - Medical Malpractice | 385 Property Damage Product Liability | 740 Railway Labor Act | 862 Black Lung (923) | 850 Securities/Commodities/ Exchange |
| 196 Franchise | | | 751 Family and Medical Leave Act | 863 DIWC/DIWW (405(g)) | 890 Other Statutory Actions |
| | | | 790 Other Labor Litigation | 864 SSID Title XVI | 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 791 Employee Retirement Income Security Act | 865 RSI (405(g)) | 893 Environmental Matters |
| 210 Land Condemnation | 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | 895 Freedom of Information Act |
| 220 Foreclosure | 441 Voting | 463 Alien Detainee | | 870 Taxes (U.S. Plaintiff or Defendant) | 896 Arbitration |
| 230 Rent Lease & Ejectment | 442 Employment | 510 Motions to Vacate Sentence | | 871 IRS—Third Party 26 USC 7609 | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 240 Torts to Land | 443 Housing/ Accommodations | 530 General | | | |
| 245 Tort Product Liability | [X] 445 Amer. w/Disabilities - Employment | 535 Death Penalty | **IMMIGRATION** | | 950 Constitutionality of State Statutes |
| 290 All Other Real Property | 446 Amer. w/Disabilities - Other | **Other:** | 462 Naturalization Application | | |
| | | 540 Mandamus & Other | 465 Other Immigration Actions | | |
| | 448 Education | 550 Civil Rights | | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101)

Brief description of cause:
Violations of the ADA, PHRA and the PFPO.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: 1/30/2024

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #  AMOUNT  APPLYING IFP  JUDGE  MAG. JUDGE